IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KIMBERLY WALLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 06-3227 |
| | ) | |
| TOWNSEND VISION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court are several motions in limine.

I.

(A)

Plaintiff Kimberly Wallis has filed a motion in limine which pertains to the conduct of Cargill Meat Solutions Corporation or any of its employees or agents. The Plaintiff asks the Court to preclude Defendant Townsend Vision, Inc., d/b/a Townsend Engineering Company, its witnesses and its lawyers from testifying, arguing, referencing or otherwise mentioning before the jury by statement, innuendo, exhibit, or otherwise, any reference

to the conduct of her employer, Cargill Meat Solutions Corporation, or any of its employees or agents, as being the cause of the Plaintiff's alleged injuries or damages.

The Plaintiff's two-count amended complaint includes claims for strict liability and negligence. Wallis seeks to prevent Townsend from attempting to introduce evidence that Cargill, its employees or agents were negligent in some fashion with regard to the supervision of other employees at the work site. Additionally, Wallis anticipates Townsend will argue that the actions of her co-worker and Cargill's employee, Ismael Rivera, were a proximate cause of her injury.

Wallis notes that Townsend has not filed a cross-claim seeking contribution from Cargill or Rivera alleging any of the above acts as being negligent acts or omissions. Wallis asserts that the aforementioned facts or allegations of negligence on Cargill's part are irrelevant and immaterial to any issue, given that neither Cargill nor any of its employees have been named as a third party defendant in the case and will not be named on the verdict form. However, the conduct of a plaintiff or a third party can be

relevant to the issue of proximate cause in product liability cases.  See Korando v. The Uniroyal Goodrich Tire Co., 159 Ill. 2d 335, 345 (1994).

Townsend opposes Wallis's motion and claims that Cargill's conduct and that of its employees is admissible on the issues of causation and lack of product defect.  It asserts that Cargill's conduct and that of its employees is also relevant because Wallis claimed in a sexual harassment suit that Cargill's conduct caused the accident.  Townsend alleges that it is entitled to present evidence of these prior inconsistent statements at trial, in order to show that something other than a product defect caused Wallis's accident.  Townsend further contends that the record contains substantial evidence that Wallis claimed the sexual harassment conduct of Rivera, and Cargill's failure to stop it, "distracted" her and caused her to put her hand into the machine part.  Although it acknowledges that Cargill will not be listed on the jury verdict form and the jury will not assess a percentage of the fault to Cargill, Townsend contends that it should not be precluded from arguing that Cargill's conduct, along with Wallis's inattention, "caused" her accident.  Townsend asserts, moreover, that it should not be

barred from presenting evidence that might help the jury conclude that its product was not defective, or that any defect was not the proximate cause of the accident.

The Court agrees that some of this evidence may potentially be relevant to the issue of causation and lack of product defect. In its answer, Townsend denied the specific allegations pertaining to Wallis's strict liability and negligence claims. Thus, Townsend has denied that its product proximately caused Wallis's accident. Townsend should not be precluded at trial from asserting alternative theories for the accident when it has denied liability from the beginning of this lawsuit.

Accordingly, although Cargill will not be listed on the jury verdict form, Townsend is not barred from presenting evidence or argument that reasons other than product defect or its own negligence contributed to the accident. Wallis's motion will be denied in part.

(B)

Wallis also seeks to prevent any argument that Cargill officials were negligent in offering Wallis, an operator of the Townsend Model 7600

Skinning Machine, the use of a smaller size Best Glove, which was not recommended by Townsend. Moreover, she expects that Townsend will argue that this glove was a cause of the injury because it was different than the glove that it recommended, in that it allows the hand to be caught and pulled into the skinning machine.

Townsend told the meat processing companies who purchased its product that if the operators were going to wear gloves, they should only wear the gloves that it had recommended. Wallis asserts that this is not enough because Townsend should have known that some of its meat processor customers would supply or allow their employees to wear gloves other than those recommended by Townsend. Wallis notes that Townsend cannot delegate to another company its duty to warn of an unreasonably dangerous condition. Turney v. Ford Motor Co., 94 Ill. App.3d 678, 684 (1st Dist. 1981).

Steve Cate, the Vice President in charge of developing the Townsend 7600 Skinning Machine, testified that the Technical Manual provided that if the operators of the machine were to wear a glove, they should wear only

the glove designated as Part No. 17235.  Townsend's practice was to send two manuals to purchasers of skinning machines.  One would be sent via registered mail to the plant manager.  The other is sent with the machine. Cate testified that Townsend's instructions are for operators to read the manual.  There are no warnings on the machine with respect to which gloves should be worn.  However, the machine did include a warning advising the operator to read the manual before operating the machine.  Wallis contends that this warning is inadequate because (1) it did not advise the operator of the risk involved in wearing a different glove; (2) it did not warn her to only use the Best Glove 67 NFW-10; and (3) the warning was etched into the skinner and not visible to the operator of the machine.  Wallis and others who operated the skinner said that they never saw this warning.

Cate also testified that Townsend sales representatives would visit the Cargill Plant on a regular basis and would walk through the processing area and view the operation of the Townsend machines.  If they saw an employee wearing something other than the recommended glove, they were to report it to Townsend and Cargill as an unsafe work practice and tell Cargill that

6

its employees should wear only the recommended glove.  Additionally, Cate testified that the Best Glove 67 NFW-10 did "not guarantee protection from getting cut or being caught by moving machinery."  It would merely minimize injury.

Although the machine itself did not include a warning about gloves, the Court concludes that Townsend took sufficient steps to warn potential users about which gloves should be used when operating the skinning machines.  Townsend did not simply delegate this duty to Cargill.  Moreover, Townsend was not really in a position to ensure that Cargill employees read the manual before operating the skinners.  Accordingly, Townsend should not be precluded from raising this argument.  The Court will deny Wallis's motion.

II.

Wallis has also filed a motion requesting that the Court bar any mention of her worker's compensation case against Cargill Meat Solutions.  Townsend acknowledges that this evidence is generally inadmissible and does not oppose the motion.   However, Townsend cites two examples of

when such evidence may be admissible.  Pursuant to Federal Rule of Evidence 801(d), if Wallis made prior inconsistent statements during her worker's compensation case, those statements would be admissible.  The second instance is if Wallis were to "open the door" to such evidence.

The Court will allow Wallis's unopposed motion.  If one of the exceptions noted above arises at trial, the Court will consider the evidentiary issues at that time.

## III.

Wallis has filed a motion in limine asking the Court to preclude Townsend, its witnesses and lawyers from testifying, arguing, referencing or otherwise mentioning before the jury by statement, innuendo, exhibit, or otherwise, any reference to (1) the "fact that Plaintiff submitted to an independent medical exam by a psychiatrist, Wayne Stillings, that was demanded by her employer Cargill in her workers compensation case against Cargill and that she was given psychological tests by an unknown psychologist, the results of these tests or reports of Dr. Stillings;" and (2) that Wallis filed a sexual harassment complaint against her employer Cargill,

or that Cargill or any insurance agency refused to pay for certain treatments and medications for Plaintiff.

Townsend has no opposition to the motion as it relates to Dr. Stillings.  It will not call Dr. Stillings as a witness.  Any reference to Dr. Stillings in Dr. Packman's deposition may be excised.  Townsend further states that it does not intend to offer evidence that the costs of her psychological treatment were paid for by worker's compensation insurance.

Townsend objects to the motion to the extent that Wallis seeks to exclude evidence of her Title VII sexual harassment lawsuit against Cargill.  Townsend states that it will assert in subsequent filings that those matters are relevant because in that case (and when it was her benefit to do so), Wallis claimed that Cargill's conduct caused the accident.

The Court will allow Wallis's motion, to the extent that she seeks to exclude any evidence that she submitted to an independent medical exam by Dr. Stillings.  No reference to this exam or the tests or reports of Dr. Stillings will be permitted.  Moreover, any reference to Dr. Stillings in Dr. Packman's deposition transcript may be excised.  The Court will rule on the

request regarding the sexual harassment complaint with respect to Cargill when that issue is briefed.

IV.

(A)

The Plaintiff has filed a motion in limine regarding the testimony of J. Dan McCausland and other Townsend witnesses. The motion seeks to prevent any evidence that injuries using skinning machines occur less than once per every 4.7 million operations. McCausland's report states as follows:

> Work methods (as described above) have proven highly reliable as safety measures for operating open top skinning machines. This has been the case for over 60 years in the meat industry. During calendar year 2006 (most recent year for which figures are available) hog slaughter in the U.S. totaled, 104,845,000 animals. An average of six (6) pieces from each hog carcass will normally be skinned, typically 74% (or more) of which are skinned on open top machines; or, approximately 471,800,000 pieces skinned on this type of equipment (this figure does not include beef operations, which use similar/identical equipment). Accidents with severe injuries, such as those incurred by Ms. Wallis, are quite rare. Severe injuries on this equipment are, in fact, a distinct anomaly, occurring less than once per 4.7 million machine cycles (pieces skinned). Clearly, this indicates that safe operation of open top skinners is the industry norm. Performance results–hundreds of millions of injury free work

10

cycles completed annually–further indicate that the hierarchy of controls approach applied to guarding skinning machines is quite effective.

OSHA citations on open top skinners have also been quite rare, especially for a piece of equipment in common use for the entire period of time that OSHA has been in existence.  OSHA inspectors have been in meat plants on hundreds of occasions over the past 35 years, and have seldom cited skinning machine operations for "machine guarding" violations.

McCausland is an employee of the American Meat Institute ("AMI"), the National Trade Association for Meat Processors and Manufacturers of Meat Processing Equipment.  Townsend and Cargill are members of AMI.

According to his affidavit, McCausland has served as Director, Worker Safety and Human Resources, for the AMI since 1999.  In that capacity, he is responsible for all member issues with occupational safety and human resources.  Consequently, McCausland states that he keeps abreast of any and all safety issues in the industry, including but not limited to, meat processing equipment and pork product skinning and de-fatting machines.

### (B)

"Expert testimony is admissible if scientific, technical or other

specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Winters v. Fru-Con, Inc., 498 F.3d 734, 741 (7th Cir. 2007) (citations and internal quotation marks omitted). Wallis asserts that the basis for McCausland's opinion does not meet the requirements of Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), a judge should first determine whether an expert's opinion is grounded in reliable scientific methodology by considering factors such as: (1) whether the proposed theory can be and has been tested; (2) whether it has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether it has been accepted in the particular scientific community.  Id. at 742 (citations

omitted).

Wallis claims that in order for McCausland to testify that the skinning machine is not unreasonably dangerous or unsafe when used in a reasonably foreseeable manner, Townsend must lay a proper foundation that "the absence of prior accidents took place with respect to machines substantially identical to the one at issue and used in settings and circumstances sufficiently similar to those surrounding the machine at the time of the accident to allow the jury to connect past experience with the accident sued upon." Walker v. Trico Manufacturing Co., Inc., 487 F.2d 595, 599 (7th Cir. 1973) (citing McCormick, Evidence, § 200 (2d ed., 1972)).  Townsend alleges that a proper foundation has been established for McCausland's testimony, and that the evidence is uniquely relevant to the issues of (1) lack of design defect; (2) causation; and (3) Wallis's contributory negligence.

"Evidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, to show existence of the danger, and to show the cause of the accident." Weir v. Crown Equipment Corp.,

13

217 F.3d 453, 457 (7th Cir. 2000) (quoting <u>Nachtsheim v. Beech Aircraft Corp.</u>, 847 F.2d 1261, 1268 (7th Cir. 1988)).  "However, before such evidence will be admitted, the proponent must show that the other accidents occurred under *substantially similar circumstances*."  <u>Nachtsheim</u>, 847 F.2d at 1268 (emphasis in original).  The same principle applies in cases such as this when a party seeks to introduce negative evidence.

The introduction of negative evidence concerning the lack of a similar number of accidents is generally held to be inadmissible "because of its insignificant probative qualities and its tendency to introduce a multitude of collateral inquiries."  <u>See</u> <u>Klonowski v. International Armament Corp.</u>, 17 F.3d 992, 996 (7th Cir. 1994) (applying Wisconsin law).  That type of evidence is only admissible if the party seeking to introduce it shows that the lack of accidents involved products that are substantially identical in situations that are sufficiently similar.  <u>Id.</u> (citing <u>Walker</u>, 487 F.2d at 599).

(C)

Wallis further contends that McCausland's report for AMI contains hearsay slaughter and production figures for all types of meat processing

14

procedures.  The 104,845,000 figure provided for the number of slaughtered hogs in 2006 was obtained from Meat and Poultry Facts 2007, which McCausland testified is a document assembled every year by the AMI and a research company.  Townsend contends that this evidence is admissible under Federal Rule of Evidence 803(8)(A), as a reasonably trustworthy report from a federal government agency.

Wallis questions McCausland's estimate that each hog carcass is divided into six pieces for skinning.  According to Wallis, McCausland's estimate that 75% of the six pieces of each hog were skinned on open top machines was "a pure guess," though he described his estimates as very conservative[1] and based on his experience of many years in the industry and having observed many plants.

Wallis asserts that it is impossible to test or verify McCausland's claim that severe injuries on equipment such as the skinning machines are a

---

[1]McCausland stated, for example, that there are probably ten or more pieces from each carcass that are skinned, the vast majority of which are skinned on open top machines.

15

distinct anomaly, occurring less than once every 4.7 million cycles.[2]  There are no documents which provide a correlation of pork butts processed and the percentage of accidents using this equipment.  This is how McCausland arrived at that figure:

> Well, I believe the 471,800,000 pieces skinned is a reasonable approximation.  It may be plus or minus some percentage.  I believe that is relatively small.  However, if you take 471,800,000 pieces and divide it by 100, you would have the figure once per 4.7 million machine cycles.  I'm absolutely positive that there are not 100 injuries such as the one that occurred to Ms. Wallis in a given year and the reason I'm positive about that is the American Meat Institute has an alliance with OSHA and we work together with them directly, we have an implementation team that works with OSHA.  If there were any significant number, if there were ten injuries like that which occurred with Ms. Wallis happening every year, it would be identified by OSHA as well as American Meat Institute members, and we would be doing something or trying to do something specific to address it.  There is no such identification.  It is my firm belief that there aren't even as many as ten injuries happening every year which would be once per 47 million machine cycles.

McCausland then explained that information on injuries could be obtained from OSHA 300 logs.  Moreover, OSHA offices could be contacted to

---

[2]In fact, McCausland states that he believes the number is significantly less than one incident per 4.7 million machine cycles.

determine if there were any complaints about or inspections of skinning machines.

McCausland further testified that he believes OSHA keeps all of its citations for an indefinite period. Moreover, OSHA has a data sorting mechanism that allows it to classify injuries. McCausland stated that OSHA has not performed an analysis with respect to injuries on open top skinning machines. He testified that is because it is not a major problem, though McCausland stated that he did not know if OSHA had attempted to determine how common these injuries are.

In his affidavit, McCausland states that his figures are accurate estimates because, in his capacity at AMI, he would be aware if accidents on these machines were a significant problem. Moreover, McCausland has traveled to meat processing facilities across the United States and in other countries and is thus familiar with industry practices. McCausland claims that his estimate in this case is based on the actual number of hogs slaughtered in 2006, coupled with his knowledge of typical meat processing procedures. Additionally, McCausland states that if there were as many as

17

100 accidents on skinning machines per year, then OSHA would be aware of that fact and he would therefore know.

Wallis alleges that the bases for the opinion do not include facts or data cited by experts in his field.  Moreover, McCausland's opinion fails to meet the standards for reliability and cannot properly be applied to the facts because: (1) the AMI's Publication's statement of the number of pork products processed in the United States each year constitutes hearsay and has not been tested; (2) the number of pork products skinned per year and the percentage of those products skinned has not been reviewed by any other publication or expert; (3) there is no  information establishing that for the 75% of the pork products skinned on an open top machine, the machines were similar to the Townsend 7600, in that they did not have stop switches, guards or warnings in regard to wearing gloves that would prevent the operator from making contact with the cutting blade; and (4) there is no information provided to establish the known or potential rate of error in the numbers or percentages used in making the calculations concerning the rate of injuries using a skinning machine similar to or the same as the one in this

case.

Wallis further contends that: (1) there is no evidence concerning the existence of standards controlling the calculations of the number of injuries by operators of skinning machines; (2) there is no evidence that McCausland's calculation of the rate of injuries of less than one per 4.7 million skinning operations was accepted by anyone else in the pork processing communities; and (3) there is no definition of the term "serious injury," and the number of "serious injuries" that occur is irrelevant to determining if the skinning machine was unreasonably dangerous.

(D)

The Court concludes that McCausland's opinion as to the number of hogs slaughtered, which is based on published data from a government agency, is admissible under Rule 803(8)(A).  Moreover, the Court will permit McCausland to testify about the average number of pieces from each hog carcass that are skinned.  McCausland has significant experience in the industry and he has thus accumulated extensive knowledge of its practices over the years.  He can testify as to what he has observed in the plants that

19

he has visited.  Some of McCausland's testimony may assist the trier of fact to better understand the evidence.  However, some of his opinions may be more problematic.

To the extent that Wallis contends that McCausland's opinions do not meet the factors articulated in <u>Daubert</u> and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), the Court notes that those factors pertaining to the scientific methodology may not apply in a case such as this.  "[T]he test of reliability is 'flexible,' and <u>Daubert</u>'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case."  <u>Kumho Tire Co.</u>, 526 U.S. at 141.  The Supreme Court explained:

> It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist.  Nor, on the other hand, does the presence of <u>Daubert's</u> general acceptance factor help show that an expert's testimony is reliable where the discipline itself attacks reliability, as, for example, do theories grounded in any so-called generally accepted principles of astrology and necromancy.

<u>Id.</u> at 151.

In this case, it would not necessarily be surprising if McCausland's

20

theories have not been tested, subjected to peer review or evaluated in light of potential rates of error.  Issues sometimes arise in a particular case which have not been the subject of frequent litigation.  This may well be true about some of McCausland's opinions.  The Supreme Court has stated that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  <u>Daubert</u>, 509 U.S. at 596.

The problem with McCausland's opinion that injuries using skinning machines occur less than once per 4.7 million operations is that there does not appear to be any indication that these skinning machines are similar to the Townsend 7600.  The Court has reviewed McCausland's report, his affidavit and his deposition testimony.  None of those exhibits includes information about how the skinning machine at the center of this case compares to the other skinning machines which are used to skin the approximately 471,800,000 pieces to which McCausland refers.  The Court concludes that, unless there is a showing that the skinning machines are

substantially identical, any testimony from McCausland or other evidence that injuries occur less than once per 4.7 million operations is inadmissible. See Klonowski, 17 F.3d at 996 (citing Walker, 487 F.2d at 599).  Because there is a risk that such evidence could mislead the jury, the Court will allow the motion in part and exclude such evidence unless Townsend establishes the requisite foundation.  The Court will deny Wallis's motion to the extent that it seeks to exclude McCausland's other opinions.

V.

The Plaintiff moves in limine for an Order excluding any and all testimony, inferences or argument by the Defendant, its counsel or any witnesses acting on Townsend's behalf suggesting that Wallis is not married to Guido Luis Bron, the father of her three children.  Wallis claims that there can be no purpose for which this evidence would prove relevant. Wallis asserts, moreover, that even if such evidence has some limited relevance under Rule 401, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury, pursuant to Rule 403.

22

Townsend objects to the motion for two narrow reasons. In the deposition of Dr. Paul Packman, Wallis's treating psychiatrist, Dr. Packman was asked if the fact that Wallis was unmarried, and the mother of three small children, and was receiving sporadic financial support from the father of the children (Mr. Bron), was a "stressor" in her life that might bear on her "post-traumatic stress disorder" ("PTSD").[3] Dr. Packman testified that it could be a "psychiatric stressor" for anyone in that situation. Moreover, a physically abusive relationship could create some psychosocial stress. Townsend claims that counsel did not object to this testimony at the deposition, where the parties agreed that objections were to be made, or they were waived. Consequently, Townsend asserts that the nature of Wallis's relationship with Mr. Bron is relevant and admissible evidence, based on Dr. Packman's testimony.

As for their second objection, Townsend notes that Wallis has listed Bron as one of her trial witnesses. Moreover, Bron gave a deposition in the sexual harassment case. Townsend alleges that, if Bron is called to testify

---

[3]Townsend notes that Wallis is suing for money damages based on, inter alia, a claim for psychological injury known as PTSD.

23

as a witness, the jury should at least be entitled to know his marital status and the nature of his relationship with the Plaintiff, so that it can assess his demeanor and credibility as a witness.  Additionally, Townsend states that if Wallis's motion is granted, the ruling should not be interpreted as allowing counsel to imply that Wallis is married to Bron.

Based on the foregoing, it is apparent that Townsend recognizes that the nature of Wallis's relationship with Bron should not be a frequent topic at trial.  However, the Court agrees with Townsend that the testimony, argument or evidence may potentially be relevant in the limited instances described in its brief and noted above.  Moreover, the Court believes that the danger of unfair prejudice to the Plaintiff based on her marital status is not as significant as it would have been in another era and is now relatively low.  Accordingly, the Court will deny Wallis's motion, but limit any reference to her marital status to those instances noted above.

## VI.

### (A)

Wallis moves in limine for an Order instructing Townsend, its counsel

and its witnesses from mentioning, referring to, inferring, arguing before the jury or otherwise attempting to convey before the jury or venire, that Wallis filed a sexual harassment lawsuit against Cargill Meat Solutions Corporation.  See Kimberly Wallis v. Cargill Meat Solutions Corporation, No. 3:06-CV-03147-RM-CHE.  Thus, Wallis seeks to exclude any and all testimony, inferences or argument that she filed the suit against Cargill.

In support of the motion, Wallis states that she settled all claims against Cargill for the sexual harassment which occurred in the workplace prior to September 28, 2005, the day that she was injured.  Moreover, the damages that Wallis received from Cargill under the Settlement Agreement were for damages up to the date of her injury and thus have no bearing on her claims against Townsend.  Wallis claims that any testimony or reference to the Settlement Agreement by Townsend is irrelevant under Rule 401 and should therefore be excluded under Rule 402.  She further asserts that although the Settlement Agreement has no probative value, there is a substantial danger of unfair prejudice if it is admitted into evidence. Additionally, Wallis alleges that such evidence will only confuse the issues

25

and mislead the jury and thus should be excluded under Rule 403.

Wallis further contends that any reference to such information is also irrelevant based on the collateral source rule. She notes that pursuant to that doctrine, "benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." Wills v. Foster, 229 Ill.2d 393, 399 (2008). The court further notes that the Restatement (Second) of Torts provides, "Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." Id. (quoting Restatement (Second) of Torts § 920(a)(2), at 513 (1979)). "[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor." Arthur v. Catour, 216 Ill.2d 72, 79 (2005) (quoting Restatement (Second) of Torts § 920(A), Comment b, at 514).

Thus, the rule is intended to preclude the introduction of evidence about collateral income. Wills, 229 Ill.2d at 400. The concern behind the

rule is that the trier of fact may use the evidence improperly to deny full recovery to a plaintiff.  See Arthur, 216 Ill.2d at 80.

The collateral source rule has both evidentiary and substantive components.  Wills, 229 Ill.2d at 400.  In terms of evidence, the rule precludes the jury from learning anything about collateral income by, for example, barring defendants from introducing any evidence that all or some of a plaintiff's losses have been covered by insurance.  See id.  "As a substantive rule of damages, the rule bars a defendant from reducing the plaintiff's compensatory award by the amount the plaintiff received from the collateral source."  Id. (internal quotation marks omitted).

Based on the foregoing, Wallis asserts that Townsend should not be allowed to benefit from any damages that she received from Cargill.  Those damages have no bearing on her claim against Townsend.  Accordingly, Wallis seeks to preclude evidence at all stages of the trial that she filed a sexual harassment suit against Cargill Meat Solutions Corporation, and that Wallis entered into a Settlement Agreement with Cargill for the sexual harassment that occurred in the workplace prior to and on the day of her

injury.

(B)

Townsend asserts that the evidence is relevant because Wallis has argued that Cargill, in failing to address her sexual harassment claims, caused the accident.  Thus, it claims that Wallis's Title VII lawsuit is probative on the issues of: (1) lack of probable cause; and (2) lack of product defect.

Townsend notes that Wallis claimed in her Title VII action that she was distracted due to the harassing conduct of a male co-worker, Rivera, and that this distraction caused her to stick her left hand into Townsend's machine.  Townsend further states that, while recovering in the hospital, Wallis told a Cargill supervisory employee, Sam Niggilari, that "this accident wouldn't have happened were it not for Mr. Rivera."

According to Townsend, the claims made by Wallis about the cause of the accident in a formal, judicial proceeding are admissible evidence in this case as admissions.  It contends, moreover, that the fact that she filed a Title VII action in federal court, and made statements under oath

28

regarding the cause of the accident to a federal agency, the United States Equal Employment Opportunity Commission ("EEOC"), as well as in her deposition in the employment case, is also admissible on the issue of how serious she was about making these allegations.

Townsend further alleges that Wallis has given deposition testimony about the accident in this case and in the Title VII action filed against Cargill. In the discrimination lawsuit, Wallis specifically claimed that Rivera's sexually harassing conduct caused the accident, resulting in her injury. Specifically, the harassment caused her attention to be diverted causing her to stick her hand into the mechanism of a Townsend skinning machine she was operating. Townsend asserts that Wallis's testimony in the Title VII action is admissible into evidence against her in this case under Rule 801(d)(1) as a prior statement by a witness, or under Rule 801(d)(2) as an admission by a party opponent.

Townsend further notes that Wallis's EEOC charge states, in pertinent part, that "on Sept. 28, 2005, the continued harassment caused a severe work related accident wherein I incurred the loss of a finger." The Seventh

Circuit has observed that "it is well-established in this circuit that the pleading in one proceeding is admissible and cognizable as an admission in another." Walaschek & Assocs., Inc. v. Crow, 733 F.2d 51, 54 (7th Cir. 1984) (citing Enquip, Inc. v. Smith-McDonald Corp., 655 F.2d 115 (7th Cir. 1981)). Townsend asserts that the same principle applies to any sworn testimony by or statements made by Wallis in the Title VII action alleging that Cargill was responsible for the accident. Moreover, Rule 801(d)(1)(A) provides that prior sworn testimony is not hearsay and may be used when the witness later testifies inconsistently with her prior testimony.

Townsend further contends that, pursuant to Rule 801(d)(2)(A)(2), any prior statements in the Title VII action by Wallis that Cargill caused the accident or was at fault are admissible as admissions by a party-opponent. This includes her sworn claim in her written EEOC charge and other statements that are evidentiary admissions.

Townsend further alleges that there are certain pleadings filed by Wallis in the Title VII case that are admissible in this case. Paragraph 20, page 7 of her Complaint states:

On September 28, 2005, Rivera continued his practice of making harassing comments and refused to switch positions. Plaintiff refused to look at Rivera.  Rivera then became mad because Plaintiff would not acknowledge him and began to throw meat at her.  Rivera then refused to switch machines after 30 minutes.  No supervisor was on Plaintiff's line so Plaintiff called to a supervisor in training, Stacy Garcia, who started to walk over toward her.  Because of Rivera's refusal to switch machines and his other antics, Plaintiff was distracted.  All of this commotion and activity distracted Plaintiff and her hand was caught in the cutting machine she operated.  Plaintiff lost her thumb and a finger on her left hand when her hand was caught in the machine.  The thumb has been reattached but cannot be used.

Townsend asserts that these statements, which were filed in formal pleadings in this Court in a case arising out of the same set of facts and circumstances, are obviously admissible into evidence in this case as admissions.  See Fed. R. Evid. 801(d)(2); see also Walaschek, 733 F.2d at 54.  Townsend contends that it is particularly important that such statements be admissible in cases such as this when separate actions have been filed against different parties seeking recovery for the same injuries.

(C)

Based on Townsend's argument in response to Wallis's motion, it does not appear to the Court that the collateral source rule will be implicated.

31

The Court agrees that evidence pertaining to any amount that Wallis may have recovered in her suit against Cargill is not admissible.

Townsend does not allege that it intends to offer into evidence the Settlement Agreement with Cargill.  Rather, Townsend claims that it will seek to introduce Wallis's own statements made under oath to the EEOC or during her deposition.  It may also seek to offer statements that Wallis allegedly made to other employees regarding the cause of the accident. Townsend also plans to offer into evidence certain allegations which are contained in her complaint against Cargill.

Although Wallis now alleges that the harassment occurred prior to the date of her injury, her previous statements and allegations suggest that it was also occurring at the time of the accident.  Accordingly, it is obviously relevant under Rule 401 and probative on issues that are central to this case. To the extent that Wallis argues that the evidence should be excluded under Rule 403,[4] the Court is unable to conclude that Wallis would be unfairly

---

[4]Wallis's argument under Rule 403 made be directed solely at the issue of whether the Settlement Agreement in the prior case is offered into evidence.  As the Court noted, it does not appear that Townsend intends to offer into evidence the Settlement Agreement entered into by Wallis and Cargill.

prejudiced by the introduction into evidence of her own statements or statements made on her behalf in formal pleadings.  Nor has Wallis established how such evidence would confuse the issues or be misleading to the jury.  The statements at issue are non-hearsay and are admissible as either a prior statement by a witness under Rule 801(d)(1) or as an admission by a party opponent under Rule 801(d)(2).

The Court concludes that the evidence Townsend seeks to present is relevant.  Wallis has pointed to no legitimate basis to exclude it.  Accordingly, Wallis's motion in limine to bar any mention of her sexual harassment suit against Cargill will be Denied.[5]

## VII.

## (A)

Wallis next moves in limine to bar the introduction of Townsend's exemplar of its 7600 Skinning Machine or any photos thereof.  Wallis seeks to prevent the Defendant, its counsel and its witnesses from mentioning, referring to, inferring, arguing before the jury or otherwise attempting to

---

[5]If Townsend seeks to enter the Settlement Agreement into evidence, then Wallis may move to exclude it based on the Collateral Source Rule.

33

convey before the jury or venire the existence or use of the exemplar machine depicted in photographs attached to her motion, as demonstrative evidence that the Townsend Model 7600 Skinning Machine 1815, operated by Wallis on September 28, 2005, had visible warnings on it when it left the control of Townsend in October 1998.

In support of the motion, Wallis states that Townsend intends to claim that the exemplar machine will show the jury what the 7600 Skinning Machine looked like when it left Townsend's control in October 1998. Wallis alleges that counsel for Townsend has indicated in emails to her attorney that he will attempt to offer as demonstrative evidence the machine, which will be evidence to the jury that the machine she operated had adequate and visible warnings about its operation and the need to wear a certain glove. Wallis contends that there is no foundation that the proposed exemplar machine is the same model or substantially similar to Machine No. 1815. The machine identified in the photograph was constructed according to specifications for the machine operated by Juan Perez who was a plaintiff in <u>Perez v. Townsend Engineering Company</u>, Case

Number 4-CV-2337, in the United States District Court for the Middle District of Pennsylvania.

Wallis further claims that Townsend has failed to disclose its planned production of the exemplar in any of its discovery responses. Moreover, it has failed to lay a foundation authenticating that the exemplar machine in the exhibit depicts the Model 7600 Skinning Machine in the same condition as the No. 1815 when it left Townsend's control in October 1998. Wallis attaches to its motion a photograph of No. 1815 which she was operating at the time of the accident. It was taken in September 2006 when Wallis's attorney and her consulting expert were first allowed by Cargill to visit the worksite.

Wallis's First Amended Complaint contains the allegation that the Model 7600 Skinning Machine was in an unreasonably dangerous condition when it left Townsend's control, in that the "machine did not have adequate or reasonably visible warnings advising the operator of risks in using machines properly and not to place his or her hands near the cutting blades and teeth of the butt skinning machine." Paragraph 12F of the Amended

35

Complaint states:

> Said machine did not have any visible warnings advising operator or the Cargill employee that if they operated the butt skinning machine while wearing gloves, that the only gloves that should be used were those designated as Townsend Part Number 17235, and if she did wear any other glove, it would increase the risk of having her hand pulled into the skinning machine.

Moreover, Wallis has testified that she never saw any warnings on the machine about keeping her hand away from the blades or reading the operation manual. Juana Soto, Wallis's co-worker on the same production line, has testified that she never saw any warnings on the No. 1815.

Wallis also has attached as exhibits to its motion Townsend's sales brochure for Model 7600 and 7650 pork skinners. The No. 1815 is one of those models. None of the machines depicted in the brochures have any of the warnings on them that appear in the exemplar that Townsend seeks to introduce. Wallis also attaches as exhibits photos of the Townsend Skinner No. 1815 and No. 170, which were taken at the Cargill Plant by McCausland, Townsend's expert, during the winter of 2008. A red plate (which may contain a warning of some type) has been welded on the machines below the control knob on the left side covering where an etched

warning is alleged by Townsend to have been located on Machine 1815 when it left its control.  The pictorial warning visible on the exemplar on either side of the defatting attachment on the top of the machine is not visible in the photos of the machines taken at the Cargill plant.

Based on the foregoing, Wallis asserts that Townsend intends to have the jury view the exemplar which contains warnings which are not on, or are not visible, on the No. 1815.  Wallis further alleges that the proposed exemplar machine will prejudice her by misleading the jury to believe that when Townsend Machine No. 1815 left its control in October 1998, it had warnings etched on the metal in such a manner that they would be clearly visible to an operator of the machine.  According to Wallis, Townsend has failed to provide any foundation evidence that the exemplar machine accurately depicts the placement and clarity of any warnings that would have been on Machine No. 1815 when it left Townsend's control in October 1998.  Therefore, Wallis asserts that it fails to meet the foundation requirements of Federal Rule of Evidence 901(a).

Rule 901(a) provides that "the requirement of authentication or

identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Wallis asserts that any probative value of the exemplar is substantially outweighed by the danger of unfair prejudice, or will mislead the jury as to what warnings may have been on Machine No. 1815 when it left Townsend's control. Additionally, Wallis contends that Townsend had failed to identify a witness who will authenticate or identify that the proposed exemplar machine or the photographs are what Townsend claims them to be. Wallis has not been able to take discovery, or examine any person or witness who would have knowledge about the existence or visibility of any warnings on the Machine No. 1815 or the Townsend exemplar.

(B)

Townsend objects to Wallis's motion, claiming that a demonstrative aid such as an exemplar product is relevant and helpful to the jury in a design defect case. It is especially true in a case such as this which involves a machine and a setting which is not within the common, ordinary

38

experience of the average juror.  Townsend further alleges that one way it can defend a design defect claim is by putting on demonstrative evidence of the condition of the product when it was sold.

Regarding Wallis's failure to warn claim, Townsend asserts that it is entitled to defend by presenting an exemplar machine to show the jury the on-product warnings when the Model 7600 Machine No. 1815 was originally sold.  Townsend further asserts that if the on-product warnings supplied with the product originally later became obliterated or were rubbed off at the time of the accident, Townsend is entitled to argue that situation is a maintenance issue for the owner of the equipment, and is not its responsibility.  According to Townsend, the exemplar skinning machine would merely be used as a demonstrative aid.  Townsend suggests that "the theory justifying admission of these exhibits requires only that the item be sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact."  See McCormick on Evidence, "Demonstrative Evidence," p. 668 (3d Ed. 1984).

Townsend asserts that its exemplar 7623 is identical in every material

39

respect with regard to how the subject machine's condition would have been when it originally was sold. It states that the subject exemplar was specifically built using the actual build order for the machine involved.

(C)

In addition to considering the parties' arguments, the Court has carefully reviewed the exhibits that they have submitted, including the photographs of the skinning machines at Cargill and Townsend's proposed exemplar. In this case, the pictures don't tell much of a story. The lighting is very poor in Wallis's Exhibits 78 and 80, which purport to be photos of Machine 1815. The Court is unable to draw any conclusions from these photographs, including whether the machine contained any warnings. The photographs taken by Townsend's expert, which are marked as Exhibits 92-2 through 92-6, are only slightly better. The Court is unable to observe any warnings, though this presumably is due to the red plate which has been welded onto the machine below the control knob, which Townsend alleges covers an etched warning that was on No. 1815 when it left its control. The photograph of the brochure describing the Model 7600, which is

included as Exhibit 9 to Wallis's motion, does not appear to contain the same warnings as the photographs of Townsend's proposed exemplar, which is Exhibit 119.   The machine in Exhibit 119 appears to include very prominent warnings, though the particular wording is illegible.

It should not be this difficult to determine what warnings, if any, were on Machine No. 1815 at the time of Wallis's injury–or at least during the discovery phase of this case.   There is a significant risk of confusing the issues or misleading the jury if Townsend is permitted to present an exemplar skinning machine which includes warnings that are different from Machine No. 1815.  Based on the evidence provided, the Court is unable to determine whether the warnings on the machines (assuming there are warnings on the No. 1815) are the same.

In its opposition to Wallis's motion for leave to file a reply brief,[6] Townsend notes that it informed Wallis in its response to her second request to produce that it intended to produce an exemplar of the skinning

---

[6]Because the Court has considered the information in Wallis's proposed reply brief and Townsend's response thereto, Wallis's motion for leave to file a reply brief will be Allowed.

machine as soon as the "accident machine" was identified.[7]   Moreover,

Wallis's counsel examined Townsend witnesses Stephen Cate and Matthew

Bergman about these issues.  Because Wallis has been aware of Townsend's

intent to produce an exemplar machine since discovery and the "accident

machine" has only been recently identified, the Court will give Townsend

an opportunity at trial to present the necessary foundation that the

exemplar is identical to the machine involved in the accident.  Accordingly,

the Court will Defer ruling on the motion in limine.

VIII.

Wallis next moves for an Order in limine instructing Townsend, its

counsel and its witnesses from mentioning, referring to, inferring, arguing

before the jury or otherwise attempting to convey before the jury or venire,

any and all testimony, inferences or argument that a jury returned a verdict

in favor of Townsend in <u>Perez v. Townsend</u>, 4:05-CV-02337, in the U.S.

---

[7]It was not until relatively recently that the machine was identified.  In an Order entered on July 10, 2009, in concluding that Townsend had failed to present any competent evidence that Wallis was working on the Unit 170 when she was injured, the Court entered summary judgment in favor of Wallis on Townsend's statute of repose affirmative defense.

District Court for the Middle District of Pennsylvania.

Townsend does not oppose Wallis's motion and acknowledges that such evidence is inadmissible into evidence unless Wallis were to "open the door" to the evidence at trial. Accordingly, the Court Allows the motion in limine. Townsend will be barred from mentioning the jury verdict, subject to the exception noted above.

Ergo, the Plaintiff's motion in limine in regard to the conduct of Cargill Meat Solutions Corporation or any of its employees or agents, wherein she seeks to exclude any evidence that her employer or its officials were a cause of her injuries, [d/e 67] is DENIED. The Plaintiff's motion in limine barring any mention of her worker's compensation case against Cargill Meat Solutions [d/e 69] is ALLOWED, as provided in this Order. The Plaintiff's motion in limine seeking to exclude Dr. Wayne Stillings's testimony and tests and that any psychological treatment was paid for by worker's compensation insurance [d/e 71] is ALLOWED, as provided in this Order. The Plaintiff's motion in limine in regard to the testimony of Townsend witnesses and J. Dan McCausland which pertains to

McCausland's opinion that injuries using skinning machines occur less than once per 4.7 million operations [d/e 73] is ALLOWED, unless Townsend first establishes the necessary foundation, as provided in this Order.  To the extent that the Plaintiff seeks to exclude McCausland's other opinions, the motion is DENIED.

The Plaintiff's motion in limine barring any and all testimony, inferences or argument that Plaintiff is not married to the father of their three children [d/e 75] is DENIED.  However, any such testimony or evidence shall be limited as provided in this Order.  The Plaintiff's motion in limine barring any mention of her sexual harassment lawsuit against Cargill Meat Solutions [d/e 77] is DENIED, to the extent provided in this Order.  The Court hereby DEFERS ruling on the Plaintiff's motion in limine barring the introduction of the Defendant's exemplar of the Townsend 7600 Skinning Machine or any photos thereof [d/e 79].  The Plaintiff's motion in limine barring any mention of a jury verdict in the case of <u>Perez v. Townsend</u> from the Middle District of Pennsylvania [d/e 81] is ALLOWED, to the extent provided in this Order.  The Plaintiff's motion for leave to file

a reply brief [d/e 94] is ALLOWED.

ENTER: August 13, 2009

FOR THE COURT:

s/Richard Mills
United States District Judge